UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No:  2:14-cr-7-FtM-29DNF

EDWARD BERGEN

_____

### REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

####    I.       Introduction

This cause is before the Court on Defendant Edward Bergen's ("Defendant") Motion for Pre-trial Suppression Hearing (Doc. 19) filed on March 18, 2014.  The Government filed a Response to Defendant's Motion to Suppress (Doc. 21) on April 2, 2014.  Defendant is charged with: (1) knowingly possessing with intent to distribute less than 50 kilograms of marijuana, (a detectable amount), a Schedule I Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D); and (2) then being a person convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessing in and affecting commerce ammunition, namely 50 rounds of .45 caliber ammunition and 31 rounds of .38 caliber ammunition, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2).  Defendant is seeking to suppress direct and derivative evidence that was gathered as a result of a search at Defendant's residence on December 13, 2013, and a custodial statement taken from Defendant contemporaneously with the December 13 search.  This matter was referred to the Court for a report and recommendation and an evidentiary hearing was held before the undersigned on April 9, 2014.  For the reasons explained below, the Court respectfully recommends that Defendant's motion be **DENIED**.

## II.     Evidence

The Government presented the testimony of a single witness, Detective Jason Hicks of the Cape Coral Police Department, and introduced three exhibits into evidence: Exhibit 1, a composite of photographs from the December 3, 2013 trash pull (seven images); Exhibit 2, a composite of photographs from the December 10, 2013 trash pull (two images); and Exhibit 3, the search warrant, affidavit, and application signed on December 11, 2013.   Defendant introduced two exhibits at the hearing: Exhibit A, a photograph of Defendant's house on December 13, 2013, showing a police bearcat vehicle in the front yard; and Exhibit B, a photograph of the type of roadside trash containers commonly used in Cape Coral, Florida.

At the hearing, Det. Hicks testified as follows.  Det. Hicks has been employed by the Cape Coral Police Department for eight years. (Tr. [1] 4).  He is currently a member of the department's Vice, Intelligence, and Narcotics ("VIN") Unit. (Tr. 4).

During November of 2013, the Cape Coral Police Department VIN Unit received information that a white male by the name of Edward Bergen was possibly conducting drug sales involving marijuana and cocaine at 227 S.E. 29th Street, Cape Coral, Florida. (Tr. 5).   The information came from an anonymous tip through the Cape Coral Police Department crime line. (Tr. 5).

Det. Hicks testified that it is typical for the VIN Unit to receive anonymous tips through the crime line. (Tr. 5).  Once an anonymous tip is received, it is assigned to a detective. (Tr. 5).  In this case, the anonymous tip was assigned to Det. Hicks and he began conducting surveillance of Defendant as well as of 227 S.E. 29th Street. (Tr. 5-6).  Through surveillance and research using Cape Coral Police Department's Records Management System ("RMS") and the Drivers

---

[1] "Tr." refers to the Transcript (Doc. 30) of the hearing held on April 9, 2014.

and Vehicle Identification Database ("DAVID"), Det. Hicks was able to positively identify the white male residing at the residence as Defendant. (Tr. 6).

Det. Hicks testified that he conducted random surveillance of the residence and observed Defendant living and staying there on a daily and nightly basis. (Tr. 6).  Det. Hicks observed activities consistent with narcotics sales and transaction occurring at the residence. (Tr. 6). Specifically, Det. Hicks observed vehicles drive up to the house and park in the driveway. (Tr. 6).  The vehicles' occupants would enter the house, only to leave a short time later. (Tr. 6).  Det. Hicks testified that based on his experience as a narcotics detective, this type of activity was consistent with drugs sales coming from a residence. (Tr. 6).

As part of his investigation, Det. Hicks conducted two trash collections from 227 S.E. 29th Street. (Tr. 7).  The first trash collection occurred on December 13, 2013. (Tr. 7).  Det. Hicks and Det. Chica, another member of the Cape Coral Police Department VIN Unit, took tied garbage bags located curb side at Defendant's residence. (Tr. 7).  Det. Hicks searched the garbage bag and discovered marijuana shake as well as mail addressed to Defendant. (Tr. 7).  Det. Hicks testified that he took the two top trash bags located in a trash receptacle in front of the residence. (Tr. 7).

On December 10, 2013, Det. Hicks and Det. Chica conducted a second trash pull. (Tr. 10).  Det. Hicks and Det. Chica recovered two trash bags which were located curb side in front of the residence at 227 S.E. 29th Street. (Tr. 10).  The detectives searched through them and discovered a small plastic baggy containing a white powdery substance, as well as some mail addressed to 227 S.E. 29th Street and some mail with Defendant's name on it. (Tr. 10-11).  A field test of the white powdery substance revealed a positive indication for cocaine. (Tr. 12).

Det. Hicks testified that based on (1) the two trash pulls which resulted in the seizure of marijuana and cocaine, (2) the mail addressed to Defendant at 227 S.E. 29th Street, and (3) the surveillance that he had conducted of the residence, observing activities consistent with narcotics sales coming from the residence, Det. Hicks obtained a search warrant for the residence which was signed by Judge James Adams of the Twentieth Judicial Circuit, in and for Lee County, Florida. (Tr. 13).

After obtaining the search warrant, on December 13, 2013, the Cape Coral Police Department VIN Unit, with the assistance of a SWAT team, K-9 unit and Street Crimes unit executed the search warrant at 227 S.E. 29th Street in Cape Coral, Florida at approximately 3:16 p.m. (Tr. 15).   Det. Hicks testified that the SWAT team, as they were securing and clearing the residence, observed Defendant and his roommate sitting on a couch in the living room. (Tr. 15). The SWAT team detained Defendant and the roommate for their safety and continued their search of the residence. (Tr. 15).   Once the SWAT team deemed the residence clear and safe, the SWAT team brought Defendant and his roommate onto the driveway of the residence. (Tr. 15).   Det. Hicks testified that he first made contact with Defendant and his roommate as they were coming outside in the driveway. (Tr. 15).   Det. Hicks pulled out his *Miranda* rights card from his wallet and read Defendant and his roommate their *Miranda* rights. (Tr. 15).   Det. Hicks then asked them if they both understood their rights. (Tr. 16).   Det. Hicks testified that they both responded yes and that they understood. (Tr. 16).   Det. Hicks then asked Defendant and his roommate whether they would like to waive their rights and speak to him without an attorney present at the time. (Tr. 16).   Both Defendant and his roommate agreed to do so. (Tr. 16).

Before questioning Defendant and his roommate, Det. Hicks showed them a copy of the search warrant and let them see each page of it. (Tr. 16).   Det. Hicks asked Defendant if there

were any narcotics located inside the residence and Defendant responded that none were inside. (Tr. 16).   Det. Hicks asked Defendant where his bedroom was located inside the house and Defendant described that his bedroom was located in the southeast corner of the residence and that this roommate's room was located in the northeast corner of the house. (Tr. 16-17). Defendant did not specifically say that his room was in the southeast corner, but described how to get to his room. (Tr. 17).

Det. Hicks then moved Defendant and his roommate inside the residence and seated them in the living room/dining room area. (Tr. 17).   Det. Hicks and Det. Chica began a search of Defendant's bedroom in the southeast corner. (Tr. 18).   Upon entering the room, Det. Hicks observed a gray colored safe sitting on top of Defendant's dresser. (Tr. 18).   It had a turn dial locking mechanism and was locked. (Tr. 18).   Det. Hicks could not get inside the safe so he went back to the living room and asked Defendant for the combination to the safe. (Tr. 18).   Defendant said he would not give Det. Hicks the safe's combination. (Tr. 18).   Det. Hicks told Defendant that if he was not going to give him the combination to the safe, he would be forced to have to break it open and possibly damage the safe. (Tr. 18).   Defendant then said "do what you have to do." (Tr. 18).

Det. Hicks and Det. Chica returned to Defendant's bedroom and pried open the safe. (Tr. 19).   Det. Hicks found within the safe Defendant's Florida identification card, a cellophane baggy containing 5.5 grams of marijuana, a small plastic baggy containing three Percocet pills as well as a large amount of small little zip lock plastic baggies, which Det. Hicks testified are used for packaging narcotics for sale. (Tr. 19).   Det. Hicks also found a small black in color digital scale, which Det. Hicks testified is used to weigh narcotics. (Tr. 19).   Det. Hicks found a small cut straw with some cocaine residue. (Tr. 19).   Det. Hicks also found 50 rounds of .45 caliber

handgun ammunition and 31 rounds of .38 caliber handgun ammunition inside the safe. (Tr. 19). Det. Hicks continued searching the room and located two more straws containing cocaine residue in Defendant's dresser drawer. (Tr. 19). After locating the drugs, paraphernalia, and ammunition, Det. Hicks returned to the living room to speak with Defendant. (Tr. 19).

Det. Hicks asked Defendant if the drugs, paraphernalia, and ammunition were his (Tr. 20). Defendant denied ownership and having any knowledge as to the actual owner. (Tr. 20). At this point, Defendant's demeanor changed from being calm to being agitated. (Tr. 20). Det. Hicks described Defendant as getting angry, saying the officers should not be in his residence and yelling and cursing at some of the officers. (Tr. 20).

Based on the evidence found at the residence, Det. Hicks placed Defendant under arrest. (Tr. 21). Defendant was transported to the Cape Coral Police Department for booking. (Tr. 21). Det. Hicks had dispatch run an NCIC/FCIC check on Defendant. (Tr. 21). The search revealed that he was a convicted felon for a prior narcotics charge. (Tr. 21). Based on this fact, coupled with the ammunition in the safe, Det. Hicks additionally charged Defendant with possession of ammunition by a convicted felon. (Tr. 21).

On cross examination, Det. Hicks testified that while executing the search of 227 S.E. 29th Street on December 13, 2013, the police forced entry into the residence. (Tr. 22). Det. Hicks testified that approximately 14 members of the SWAT team participated in the initial search of the residence. (Tr. 23). Defendant's counsel showed Det. Hicks Exhibit A, which Det. Hicks described as a picture of Defendant's residence, a white Pontiac vehicle parked at the residence, and a Cape Coral Police Department bearcat, an armored vehicle. (Tr. 23). Det. Hicks testified that the image was a fair representation of what the front of the house looked like while the SWAT team was conducting the search. (Tr. 23). Det. Hicks testified that the SWAT team

members were wearing body armor and had assault rifles when they conducted their search. (Tr. 24-25).

Det. Hicks testified that in addition to the SWAT team, there were also seven officers from the VIN Unit present, and that four street crime unit officers were present when the SWAT team conducted the initial search. (Tr. 25).   Det. Hicks further explained that the VIN Unit officers were not on the scene when the SWAT team conducted the initial search, but only arrived on scene after the SWAT team had searched the house. (Tr. 26).   Det. Hicks testified that while the SWAT team conducted the initial search, the VIN Unit officers were watching from a distance in their vehicles. (Tr. 26).   Det. Hicks testified that the search of Defendant's house uncovered no firearms and the only firearms present were brought by law enforcement officers. (Tr. 26).

Det. Hicks testified that the search warrant issued on December 11, 2013, authorized him to search the residence at 227 S.E. 29th Street at any time of the day or night. (Tr. 28).   Det. Hicks testified that he did not execute the search warrant the next day on December 12, 2013, but two days after it was issued on December 13, 2013. (Tr. 28).

Det. Hicks testified that the two trash pulls occurred on December 3 and 10 of 2013, and Det. Chica was with him for both trash pulls. (Tr. 26).   Det. Hicks testified that the trash was pulled at approximately 2 a.m. and that he had removed the top two bags in the trash cans. (Tr. 29).   Det. Hicks testified that the trash can he removed the bags from was identical to the trash cans depicted in Defendant's Exhibit B. (Tr. 30).

Det. Hicks testified that the marijuana shake present in the plastic bag in Exhibit 1 is no more than 0.2 grams of marijuana. (Tr. 33-34).   Det. Hicks testified that the cocaine found in the plastic baggy was only a residual amount. (Tr. 36).   Det. Hicks testified that his affidavit in support of the search warrant does not specify the amount of marijuana shake or cocaine located

from the trash pulls. (Tr. 36). Det. Hicks testified that his affidavit does not specify how many times he conducted surveillance of 227 S.E. 29th Street, or at what precise times of the day or night. (Tr. 37). Det. Hicks testified that the affidavit did not specify the number of times a vehicle arrived at the residence and left shortly thereafter. (Tr. 37). Det. Hicks testified that the affidavit does not contain any information at all regarding who is the registered owner of the vehicles. (Tr. 38). Det. Hicks testified that the affidavit provides no information as to whether the tip from the crime line was a citizen or an informant, or how the source knew Defendant. (Tr. 38-39). Det. Hicks testified that the search warrant does not use the word "ammunition." (Tr. 39).

Det. Hicks testified that Defendant was placed in zip-ties after SWAT forced itself into Defendant's home. (Tr. 40). Det. Hicks testified that when he read Defendant his *Miranda* rights, his supervisor, Sergeant Mike Catania and Det. Chica were present. (Tr. 41). Det. Hicks testified that he did not bring a form or card for Defendant to sign indicating he waived his *Miranda* rights. (Tr. 41). Det. Hicks testified that he did not bring any electronic recording device that would have permitted him to record his encounter with Defendant. (Tr. 41).

Det. Hicks testified that after being brought outside of his home, he was standing in front of the white Pontiac. (Tr. 42). The bear cat vehicle was still present, and the SWAT team officers were present, although they were in the process of leaving. (Tr. 42). Seven officers from the VIN Unit were also present. (Tr. 43).

### III. Analysis

Defendant argues that suppression is proper on two grounds: (1) Det. Hicks' affidavit in support of the search warrant at bar was constitutionally insufficient as it did not present a fair probability that evidence of a crime would be found at 227 SE 29th Street, Cape Coral, Florida, on or about December 11, 2013, and (2) Defendant was never advised of his *Miranda* rights and,

even if he was, he never waived them. (Doc. 19 p. 9-10). The Court will address each argument in turn.

### A) Det. Hicks' Affidavit

Defendant argues that Det. Hicks' affidavit in support of the search warrant fails to establish probable cause to support the search of Defendant's residence. (Doc. 19 p. 12; Tr. 43). According to Defendant, the affidavit possesses several deficiencies which undermine a proper probable cause finding. (Doc. 19 p. 11). These deficiencies include: (1) that the affidavit provided no direct evidence that marijuana or cocaine were ever possessed, used or sold at 227 S.E. 29th Street; (2) that there is no information provided as to the source of the anonymous tip implicating Defendant; (3) that the affidavit is silent as to how full the trash cans were, how many bags were removed, and the quantity of contraband that was found in the trash cans; (4) that the affidavit failed to specify the number of times Det. Hicks surveilled Defendant's residence or at what times the surveillance took place; (5) that the affidavit failed to identify the individuals who owned the vehicles visiting Defendant's residence; and (6) that the affidavit does not include the word ammunition. (Doc. 19 p. 11-12; Tr. 45-49). The Government responds that Det. Hicks' affidavit does establish probable cause. (Tr. 52).

The Fourth Amendment protects citizens' right to be free of unreasonable searches and seizures and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. "'Probable cause to support a search warrant exists when the totality of the circumstances allow[s] a conclusion that there is a fair probability of finding contraband or evidence at a particular location.'" *United States v. Grice,* 335 F. App'x 924, 926 (11th Cir. 2009) (quoting *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999)). "'The focus in a warrant application is usually on whether the suspect committed a crime and

whether evidence of the crime is to be found at his home or business.'" *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) (quoting *United States v. Procopio*, 88 F.3d 21, 28 (1st Cir. 1996)).  An affidavit for a search warrant should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *Id.* (citing *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001)).

In this case, Det. Hicks' affidavit described the residence located at 227 SE 29th Street, Cape Coral, Florida, gave directions as to how to travel to the residence, and contained a photograph of the residence.  The affidavit specified that the Cape Coral Police Department VIN Unit had recently received information that an individual with Defendant's name was possibly conducting sales of marijuana and cocaine at the residence located at 227 SE 29th Street, Cape Coral, Florida.  The affidavit explained that Det. Hicks through surveillance, the Cape Coral RMS and DAVID, positively identified the occupant of the residence as Defendant.

The affidavit provides that on December 3, 2013, Det. Hicks and Det. Chica conducted a trash collection from the residence at 227 SE 29th Street, Cape Coral, Florida.  Det Hicks took tied and secured garbage bags which were located curbside in front of the residence.  The affidavit explains that Det. Hicks searched the secured garbage bags and discovered two pieces of burnt cellophane (one of which contained marijuana shake), a cut top to a small yellow plastic baggie, which Det. Hicks described as being commonly used to package and sell narcotics, and three pieces of mail addressed to 227 SE 29th Street.  The marijuana was field tested by Det. Hicks, which yielded a positive test for marijuana.  The affidavit described that one of the pieces of mail was addressed to Defendant.

The affidavit explains that on December 10, 2013, Det. Hicks and Det. Chica conducted another trash collection.  Det. Hicks took tied and secured garbage bags, which were located

curbside in the front of the residence.  Det. Hicks and Det. Chica searched the secured garbage bags and discovered a small plastic baggie containing an unknown white powder (specifying such small plastic baggies are commonly used to package and sell narcotics) and several pieces of mail addressed to 227 SE 29th Street.  The affidavit provides that Det. Hicks field tested the unknown white powder, which was found inside the small plastic baggie, and the test yielded a positive result for cocaine.  The affidavit provided that one of the pieces of mail was addressed to Defendant by name.

The affidavit provided that Det. Hicks conducted random surveillance of the residence located at 227 SE 29th Street on several occasions.  During the surveillance, Det. Hicks observed Defendant at the residence on a daily and nightly basis.  Also during the surveillance, Det. Hicks observed traffic consistent with narcotic activity coming and going from the residence. The affidavit explained that the occupants of the vehicles would enter the residence only to leave a short time (minutes) later.  The affidavit provided that based on Det. Hicks' experience as a narcotics officer, these short frequent visits were consistent with narcotics being sold from the residence.

Based on this evidence, the affidavit explained that "[t]he probable cause being alleged and found that there is not being kept on said premises evidence, which will link [Defendant] and unidentified co-conspirators to the crime of Sale and Possession of Marijuana and Sales and Possession of Cocaine."

Upon review of the search warrant, the Court finds that Det. Hicks' affidavit presented such evidence that probable cause supported the search warrant signed by Judge Adams.  First, the place to be searched was adequately described.  Second, the facts set forth in the affidavit explained the crimes alleged to be taking place at the residence, i.e., the sale and possession of

marijuana, and the sale and possession of cocaine.  Third, the facts in the affidavit sufficiently linked the criminal activity in the apartment to Defendant, as Det. Hicks observed Defendant living there and that mail was addressed to Defendant at the residence.  The mail was recently postmarked, showing that Defendant was presently residing at the residence.  Thus, under the totality of the circumstances the affidavit contained enough indicia of probable cause to support the search warrant of Defendant's residence.

Defendant's argument that the search warrant was not supported by probable cause because the affidavit did not explain the "source of the information" from the anonymous tip is unavailing.  If the anonymous tip was the only evidence presented in the affidavit then it is likely that the anonymous tip alone would be insufficient to support a finding of probable cause. *See generally Illinois v. Gates,* 462 U.S. 213 (1983).  However, in this case, the information from the anonymous tip was just one fact among many that, under the totality of the circumstances, established probable cause.  Det. Hicks did not rely on the anonymous tip alone, but corroborated the tip through his surveillance and trash pulls.  Thus, the affidavit's failure to explain in greater detail the source of the information does not render the search warrant unsupported by probable cause.

Likewise, the deficiencies Defendant points out in the affidavit are not fatal to the sufficiency of the affidavit to establish probable cause to search Defendant's residence.  While Det. Hicks might have described in greater detail such facts as: (1) the days that he surveilled the residence, (2) the time of day on the dates he surveilled the residence, (3) the identity of the occupants of the cars visiting Defendant's residence, (4) how many times he surveilled the residence, etc., the fact that he did not do so does not render the affidavit insufficient.  Although

the affidavit at bar may not be a paradigm, it was nevertheless sufficient to establish probable cause.

### B) *Miranda* **Rights**

Defendant argues that he was never advised of his *Miranda* rights and that he never waived them. (Doc. 19 p. 10, Tr. 51).  The Court finds no grounds on which to find that Defendant was not read his *Miranda* rights.  Det. Hicks testified that he read Defendant his *Miranda* rights from a standard issue Cape Coral Police Department *Miranda* rights card.  This testimony was uncontroverted and Defendant failed to elicit any evidence suggesting that his *Miranda* rights were not, in fact, given to him.  Accordingly, the Court will not suppress any evidence on the grounds that Defendant was not read his *Miranda* rights.

Defendant further argues that even if his *Miranda* rights were given, Defendant did not waive them.  Defendant argues that the presence of 17 SWAT officers, 7 VIN Unit officers, and 4 street crime officers created a needlessly coercive environment which prevented Defendant from freely and voluntarily waiving his *Miranda* rights. (Tr. 51).  Additionally, Defendant notes that he never signed a written *Miranda* waiver, and there is no video or audio recording of him waiving his rights. (Doc. 19 p. 13, Tr. 50).

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.  A court must exclude from evidence any incriminating statements made by an individual if, prior to making the statement, the individual was not warned of his right to remain silent and the right to obtain counsel.  *United States v. Luna-Encinas*, 603 F.3d 876, 880 (11th Cir. 2010).  These rights attach, however, only if an individual is in custody at the time the statements were made and subject to an interrogation by officers. *J.D.B. v. North Carolina*, 131 S.Ct. 2394, 2401 (2011).

Any police interview or interrogation of a suspect has "'coercive aspects to it.'" *Id.* (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (*per curium*)).  Interviews conducted while a suspect is in police custody have a heightened risk that the statements made were coerced. *Id.* (citing *Dickerson v. United States*, 530 U.S. 428, 435 (2000)).  Because the "inherently coercive nature of custodial interrogation 'blurs the line between voluntary and involuntary statements,' [citation omitted], [the Supreme Court] adopted a set of prophylactic measures designed to safeguard the constitutional guarantee against self-incrimination."  *Id.*   Prior to questioning an individual in custody, officers must inform the individual of his right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to have counsel present.  *Id.* (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).

A suspect may waive his or her Fifth Amendment privilege "provided that the waiver is made voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444.  A court must make two distinct findings in order to determine whether a defendant's statement was made after a knowing and voluntary waiver of their *Miranda* rights. *United States v. Lewis*, 2012 WL 6569373, at *3 (S.D. Fla. Dec. 17, 2012).

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been properly waived.

*United States v. Mazuera*, 756 F. Supp. 564, 568 (S.D. Fla. 1991) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).  "Whenever the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of our *Miranda* doctrine, the State need prove waiver only by a preponderance of the evidence." *Colorado v. Connelly,* 479 U.S.

157, 168-169 (1986) (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984) and *United States v. Matlock*, 415 U.S. 164, 178 (1974)).

At the hearing, Det. Hicks testified that after the SWAT team brought Defendant and his roommate out into the driveway, he read Defendant and his roommate their Miranda rights from a standard Cape Coral Police Department *Miranda* rights card. (Tr. 15).  Det. Hicks testified that he asked Defendant and his roommate if they understood their rights, and they responded that they did understand. (Tr. 16).  Det. Hicks further testified that he asked Defendant and his roommate whether they would like to waive their rights and speak without an attorney present. (Tr. 16).  Det. Hicks testified that both agreed and said that they would speak with him. (Tr. 16).

In this case, considering the totality of the circumstances, the Court finds that the Government has met its burden of proving by a preponderance of the evidence that Defendant's waiver of his *Miranda* rights was voluntary, knowing, and intelligent. Defendant failed to present any evidence at the hearing that conflicted with Det. Hicks' testimony that he read Defendant his *Miranda* rights, Defendant understood them, and voluntarily waived them.  The fact that the waiver was secured orally, and not in writing, does not undermine the evidence that Defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights.  As the Supreme Court explained in *N. Carolina v. Butler*, 441 U.S. 369 (1979),

> An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver.  The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case.

*Id.* at 373.  Although a written *Miranda* waiver may be preferable to an oral waiver, a suspect can nevertheless waive his or her *Miranda* rights orally, as Defendant did in this case.

Defendant's argument that the overwhelming display of force of the 14 SWAT officers, 7 VIN unit officers, and 4 street crime officers caused a needlessly coercive environment which diminishes the "voluntariness" of Defendant's waiver is also unavailing.  Defendant failed to present any evidence that the police used any intimidation tactics, threats, or physical or psychological pressure in order to compel defendant to make a statement.  Nor did Defendant show that the police acted intentionally to coerce Defendant.  The mere presence of the SWAT team officers, who Det. Hicks testified were in the process of leaving the scene, does not show that Defendant was coerced into making a statement.  For these reasons,

**IT IS RESPECTFULLY RECOMMENDED THAT:**

Defendant's Motion for Pre-trial Suppression Hearing (Doc. 19) be **DENIED**.

**Respectfully recommended** in Chambers in Fort Myers, Florida on May 20, 2014.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a de novo determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02

Copies furnished to:

Counsel of Record
Unrepresented Parties